# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION (DAYTON)

| | | |
|---|---|---|
| DAMIAN WILLIAMS<br>2636 Terryhawk Drive<br>Sidney, OH 45365 | )<br>)<br>) | CASE NO.<br><br>JUDGE: |
| Plaintiff, | )<br>)<br>) | |
| v. | )<br>) | |
| HONDA DEVELOPMENT &<br>MANUFACTURING OF AMERICA, LLC<br>12500 Meranda Road<br>Anna, OH 45302 | )<br>)<br>)<br>)<br>) | **COMPLAINT FOR<br>DAMAGES AND<br>INJUNCTIVE RELIEF** |
| **Serve also:**<br>HONDA DEVELOPMENT &<br>MANUFACTURING OF<br>AMERICA, LLC<br>c/o Incorp. Services, Inc.<br>(Statutory Agent)<br>9435 Waterstone Boulevard,<br>Suite 140<br>Cincinnati, OH 45249 | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **JURY DEMAND ENDORSED<br>HEREIN** |
| Defendant. | )<br>) | |

Plaintiff Damian Williams by and through undersigned counsel, as his Complaint against the Defendant, states and avers the following:

## PARTIES

1. Williams is a resident of the city of Sidney, Shelby County, Ohio.

2. Defendant HONDA DEVELOPMENT & MANUFACTURING OF AMERICA, LLC, ("Honda") is a domestic-incorporated, for-profit limited liability company that conducts business throughout the state of Ohio and others. The relevant location of the events and omissions of this Complaint took place was 12500 Meranda Road, Anna, Ohio 45302.

3. Honda is, and was at all times hereinafter mentioned, Williams' employer within the meaning of the Family and Medical Leave Act ("FMLA") 29 U.S.C. § 2617 et seq. and R.C. § 4112 *et seq*.

## JURISDICTION & VENUE

4. The material events alleged in this Complaint occurred in or around Shelby County, Ohio.

5. Within two years of the adverse employment actions described herein, Williams filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Ohio Civil Rights Commission ("OCRC"), Charge No. 473-2021-01407 ("Charge").

6. Williams has properly exhausted all administrative remedies pursuant to R.C. § 4112.052(B)(2)(b).

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 in that Plaintiff is alleging federal law claims under the FMLA.

8. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367, as Plaintiff's state law claims are so closely related to his federal law claim that they form part of the same case or controversy under Article III of the United States Constitution.

9. Venue is proper in this Court pursuant to the FMLA

## FACTS

10. Williams is a former employee of Honda.

11. At all times noted herein, Williams was qualified for his position with Honda.

12. At all times noted herein, Williams could fully perform the essential functions of his job, with or without a reasonable accommodation.

13. Williams worked for Honda as an Assembler from January 2019, until Honda wrongfully terminated Williams' employment on or about March 17, 2021.

14. It is important to initially note that Williams is a 50-year-old man and is therefore in a protected class for his age.

15. Further, it is important to initially note that Williams is a male/man and is homosexual and is therefore in a protected class for his sexual orientation.

16. Further, it is important to initially note that Williams is African American and is therefore in a protected class for his race.

17. Further, it is important to initially note that Williams is HIV positive and is therefore in a protected class for his disability.

18. Honda had notice of Williams' disability because in or around April 2020, Williams had a conversation with Supervisor and Coordinator Sandy McReynolds about his HIV medication.

19. Further, in or around August and October 2020, Williams used FMLA leave twice for hospital stays related to his HIV.

20. Williams' conversation with McReynolds and use of FMLA leave imputed notice on Honda of Williams' disability.

21. Part of Williams' job involved a tool that easily created blisters on his hands.

22. To prevent the blisters, Williams would place a goop on the tool; however, one of Williams' coworkers, Celene Rice (Caucasian, early 20s), would remove the goop causing Williams' hands to blister again.

23. In or around August 2020, Williams confronted Rice about why she was removing the goop.

24. Rice reported Williams' confrontation to McReynolds, who then came to Williams and told him to be careful with how he addresses Rice because of her medical condition.

25. Williams did not know Rice had a medical condition.

26. Williams then reminded McReynolds about his medical condition, and that his recent change in HIV medication would cause him to get emotional.

27. McReynolds did not respond to Williams, giving him the impression that she thought he was lying about his medical condition.

28. McReynolds said that Rice did not appreciate his use of the f-word in their interaction, but Williams refuted this saying that Rice used to f-word on a daily basis.

29. Williams' conversation with McReynolds was a protected complaint of disparate treatment.

30. In or around later August 2020, Williams was hospitalized for two weeks due to an issue related to his HIV.

31. Williams made sure to report his hospitalization to Honda and used FMLA leave.

32. In or around October 2020, Williams was hospitalized against for seven to ten days.

33. Williams had no issued getting additional FMLA leave approved, and this constituted further notice to Honda of Williams' disability.

34. When Williams returned to work, the Anna Ohio Honda Engine Plant had been hit hard with COVID-19.

35. Williams told McReynolds that he could not work in his regular department because it was COVID-19 infested, which was dangerous for him (as someone with a compromised immune system) and other employees. This was a protected policy and workplace safety complaint.

36. McReynolds ignored Williams' complaint and told him to take his issue to HR.

37. A team leader, Kayla LNU, overheard Williams' conversation with McReynolds and took Williams' side, telling McReynolds not to place Williams in his previous position.

38. Despite his attempts to get moved, McReynolds continued to place Williams in his previous position.

39. Additionally, Williams received backlash from his coworker, Phil LNU (Caucasian), for refusing to work in the COVID-19 infested area.

40. Soon after this exchange with McReynolds, Williams' insurance carriers started having issues getting Williams' HIV prescription to him.

41. At one point, Williams went one month without his medication, and he started experiencing symptoms of withdrawal.

42. These withdrawal symptoms caused intense mood swings for Williams, and he mentioned this to his team leader, Jim "JB" LNU and McReynolds.

43. When Williams returned to work the next day, Phil LNU told Williams that he had to leave because of his mood swings.

44. Throughout all of January, February, and March 2021, Williams was constantly battling with his insurance company in an attempt to get his HIV medication.

45. Because of these difficulties, Williams was getting inconsistent doses of his medication which worsened his mental and emotional state.

46. Williams was forced to resort to using intermittent FMLA leave during these months.

47. Throughout this time, Rice was still working at Honda with reasonable accommodations that permitted her to work uninterrupted.

48. On or around March 17, 2021, Williams had a meeting with Phil LNU.

49. At this meeting, Williams thanked Phil LNU for his kindness and understanding related to his FMLA leave and infrequent mood swings.

50. However, Phil LNU used the meeting to instigate a mood swing by asking if Williams' mother was sick.

51. Williams responded that his personal life had nothing to do with this conversation and that he would appreciate if Phil LNU would stay out of his business.

52. Phil LNU reported Williams' statement to HR, who met Williams later that day to discuss the incident.

53. Williams met with HR Representative Megan LNU and McReynolds, who told him that he was not fired but under investigation.

54. Williams was then suspended for three days, pending investigation.

55. Megan LNU called Williams one week later and told him that Honda did not need his services anymore because of his foul language and threats.

56. Williams was confused about this accusation of threats and asked for specifics.

57. Megan LNU told Williams that she was referring to his comment, "my emotions can blow up at any minute."

58. Williams correctly pointed out that this was not a threat, but rather a symptom of his HIV medication withdrawal – something he had previously reported to Honda.

59. Megan LNU told Williams that Honda takes threats very seriously and that his employment was therefore being terminated.

60. Williams told Megan LNU that he felt like he was being fired discriminatorily against his disability, but Megan LNU said, "no, we checked and there was no discrimination."

61. Honda's purported reason(s) for Williams' employment termination was pretextual.

62. Honda actually terminated Williams' employment discriminatorily against his race, his disability, his sex/gender and sexual orientation, his age, in retaliation for his protected complaints, and/or in violation of public policy.

63. As a result of the above, Williams has suffered and will continue to suffer damages.

**COUNT I: RACIAL DISCRIMINATION IN VIOLATION OF R.C. § 4112.02 *et seq*.**

64. Williams restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

65. Williams is African American, and thus is in a protected class for his race.

66. R.C. § 4112.02 *et seq*., provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's race.

67. Honda treated Williams differently than other similarly situated employees, like Rice, based upon his race.

68. Namely, Rice (Caucasian) had ample, adequate accommodations for her disability that permitted her to work uninterrupted.

69. Disparately, Williams (African American) was forced to use intermittent FMLA leave, was ignored by McReynolds when he discussed his HIV medication, and forced to work in COVID-19 infested areas of the plant.

70. It is clear that Honda unlawfully treated its Caucasian employees more favorably than its African American employees.

71. Honda's termination of Williams' employment was an adverse employment action against him.

72. Honda's purported reason(s) for Williams' employment discrimination was pretextual.

73. Honda actually terminated Williams' employment due to his race.

7

74. Honda violated R.C. § 4112.02 *et seq.*, by terminating Williams' employment because of his race.

75. Honda violated R.C. § 4112.02 *et seq.*, by treating Williams different from other similarly situated employees outside of his protected class.

76. Honda violated R.C. §4112.02 *et seq.*, by applying its employment policies in a disparate manner based on Williams' race.

77. Honda violated R.C. § 4112.02 *et seq.*, by applying its disciplinary policies in a disparate manner based on Williams' race.

78. As a direct and proximate result of Honda's acts and omissions, Williams had suffered and will continue to suffer damages.

**COUNT II: DISABILITY DISCRIMINATION IN VIOLATION OF R.C. § 4112.02 *et seq.***

79. Williams restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

80. Williams is HIV positive, and thus is in a protected class for his disability.

81. Honda had adequate notice of Williams' disability.

82. R.C. § 4112.02 *et seq.*, provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's disability.

83. Honda treated Williams differently than other similarly situated employees, like Rice, based upon his disability.

84. Honda's termination of Williams' employment was an adverse employment action against him.

85. Honda's purported reason(s) for Williams' employment discrimination was pretextual.

86. Honda actually terminated Williams' employment due to his disability.

87. Honda violated R.C. § 4112.02 *et seq.*, by terminating Williams' employment because of his disability.

88. Honda violated R.C. § 4112.02 *et seq.*, by treating William different from other similarly situated employees outside of his protected class.

89. Honda violated R.C. §4112.02 *et seq.*, by applying its employment policies in a disparate manner based on Williams' disability.

90. Honda violated R.C. § 4112.02 *et seq.*, by applying its disciplinary policies in a disparate manner based on Williams' disability.

91. As a direct and proximate result of Honda's acts and omissions, Williams had suffered and will continue to suffer damages.

## COUNT III: RETALIATION IN VIOLATION OF THE FMLA

92. Williams restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

93. During his employment, Williams qualified for and took intermittent FMLA leave.

94. Defendant knew Williams took FMLA leave.

95. After Williams utilized his qualified FMLA leave, Defendant retaliated against him.

96. Defendant terminated Williams's employment.

97. Williams's termination was an adverse employment action against him.

98. Defendant's proffered reason for Williams's termination was pretextual.

99. There was a causal link between Williams's medical leave under the FMLA and Defendant's termination of Williams's employment.

100. Defendant actually terminated Williams for his FMLA use.

101. Defendant retaliated against Williams by terminating his employment.

102. Defendant's actions show that it willfully retaliated against Williams in violation of U.S.C. § 2615(a).

103. As a direct and proximate result of Defendant's wrongful conduct, Williams is entitled to all damages provided for in 29 U.S.C. § 2617, including liquidated damages, costs, and reasonable attorney's fees.

### COUNT IV: SEX/GENDER AND SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF R.C. § 4112.02 *et seq*.

104. Williams restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

105. Williams is a male/mand and identifies as homosexual, and thus is in a protected class for his sex/gender and sexual orientation.

106. As identified by the United States District Court for the Southern District of Ohio, "sexual orientation is inseparable from and inescapably linked to sex and, therefore, that allegations of sexual orientation discrimination involve sex-based considerations." *Spellman v. Ohio Dept. of Trans.*, 244 F.Supp. 3d 686, 698 (S.D. Ohio 2017).

107. R.C. § 4112.02 *et seq*., provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's sex/gender.

108. Honda treated Williams differently than other similarly situated employees, like Rice, based upon his sex/gender.

109. Namely, Rice (Female, heterosexual) had ample, adequate accommodations for her disability that permitted her to work uninterrupted.

110. Disparately, Williams was forced to use intermittent FMLA leave, was ignored by McReynolds when he discussed his HIV medication and forced to work in COVID-19 infested areas of the plant.

111. It is clear that Honda unlawfully treated its heterosexual employees more favorably than its homosexual employees.

112. Honda's termination of Williams' employment was an adverse employment action against him.

113. Honda's purported reason(s) for Williams' employment discrimination was pretextual.

114. Honda actually terminated Williams' employment due to his sex/gender.

115. Honda violated R.C. § 4112.02 *et seq.*, by terminating Williams' employment because of his sex/gender and sexual orientation.

116. Honda violated R.C. § 4112.02 *et seq.*, by treating Williams different from other similarly situated employees outside of his protected class.

117. Honda violated R.C. §4112.02 *et seq.*, by applying its employment policies in a disparate manner based on Williams' sex/gender and sexual orientation.

118. Honda violated R.C. § 4112.02 *et seq.*, by applying its disciplinary policies in a disparate manner based on Williams' sex/gender and sexual orientation.

119. As a direct and proximate result of Honda's acts and omissions, Williams had suffered and will continue to suffer damages.

**COUNT V: AGE DISCRIMINATION IN VIOLATION OF R.C. § 4112.02 *et seq.***

120. Williams restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

121. Williams is 50 years old, and thus is in a protected class for his age.

122. R.C. § 4112.02 *et seq*., provides that it is an unlawful discriminatory practice for an employer to discriminate against an employee on the basis of the employee's age.

123. Honda treated Williams differently than other similarly situated employees, like Rice, based upon his age.

124. Namely, Rice (early 20s) had ample, adequate accommodations for her disability that permitted her to work uninterrupted.

125. Disparately, Williams was forced to use intermittent FMLA leave, was ignored by McReynolds when he discussed his HIV medication, and forced to work in COVID-19 infested areas of the plant.

126. It is clear that Honda unlawfully treats its younger employees more favorably than its older employees.

127. Honda's termination of Williams' employment was an adverse employment action against him.

128. Honda's purported reason(s) for Williams' employment discrimination was pretextual.

129. Honda actually terminated Williams' employment due to his age.

130. Honda violated R.C. § 4112.02 *et seq*., by terminating Williams' employment because of his age.

131. Honda violated R.C. § 4112.02 *et seq*., by treating William different from other similarly situated employees outside of his protected class.

132. Honda violated R.C. §4112.02 *et seq*., by applying its employment policies in a disparate manner based on Williams' age.

12

133. Honda violated R.C. § 4112.02 *et seq.*, by applying its disciplinary policies in a disparate manner based on Williams' age.

134. As a direct and proximate result of Honda's acts and omissions, Williams had suffered and will continue to suffer damages.

**COUNT VI: RETALIATION**

135. Williams restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

136. As a result of Honda's discriminatory conduct described above, Williams made protected complaints of the discrimination and disparate treatment he was experiencing by complaining to his supervisors and HR, including McReynolds, Phil LNU, and Megan LNU.

137. Subsequent to Williams' protected complaints to his supervisors and HR about the discrimination and disparate treatment towards him, Honda took adverse employment actions against Williams including, but not limited to, suspending and then terminating his employment.

138. Honda's actions were retaliatory in nature based on Williams' opposition to the unlawful discriminatory conduct.

139. Pursuant to R.C. § 4112.02 *et seq.*, it is an unlawful discriminatory practice to discriminate in any manner against any other person because that person had opposed any unlawful discriminatory practice.

140. As a direct and proximate result of Honda's retaliatory discrimination against and discharge of Williams, he has suffered and will continue to suffer damages.

## COUNT VII: WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

141. Williams restates each and every paragraph of this Complaint, as if it were fully restated herein.

142. As stated *supra*, Williams made protected complaints of workplace safety concerns because he was being asked to work in a COVID-19 infested department.

143. As an immunocompromised individual, Williams is at an increased risk of developing life-threatening complications and/or being hospitalized should he contract the virus.

144. After making his protected complaints, Williams was ignored, yelled at, and fired.

145. A clear public policy exists in Ohio law and administrative regulations including, but not limited to, Ohio Governor Mike DeWine's declaration of a State of Emergency in Executive Order 2020-01D.

146. This Executive Order was followed by a Stay-At-Home Order issued by the Ohio Department of Health, requiring individuals with COVID-19 symptoms or those who have been exposed to COVID-19 to self-isolate and requiring that employers enact non-punitive attendance policies for employees quarantining due to COVID-19.

147. Additionally, a clear public policy is manifested in Ohio statutes and/or administrative regulations, or in the common law, against terminating and/or retaliating against an employee because he engages in a protected activity under Ohio law.

148. A clear public policy exists and is manifested in R.C. § 4101.11 stating that "[e]very employer shall furnish employment which is safe for the employees engaged therein," and "[n]o employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe . . ."

149. The Ohio Supreme Court recognized that Ohio allows an individual to seek a public policy claim if he is terminated in retaliation for reporting to his employer that he is forced to work in an unsafe work environment. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, (1990), 49 Ohio St.3d 228. *See also Pytlinski v. Brocar Products, Inc.*, 94 Ohio St.3d 77 (Ohio 2011); *Jenkins v. Cent. Transp., Inc.*, No. 09CV525, 2010 WL 420027 (N.D. Ohio Jan. 29, 2010).

150. A clear public policy exists and is manifested in Ohio statutes, and/or administrative regulations, or in the common law, against terminating an employee based on his complaints of dangerous, unsafe, or illegal activity.

151. Honda's termination of Williams' employment jeopardizes these public policies.

152. Honda's termination of Williams' employment was motivated by conduct related to these public policies.

153. Honda had no overriding business justification for terminating Williams.

154. As a direct and proximate result of Honda's conduct, Williams had suffered and will continue to suffer damages.

## **DEMAND FOR RELIEF**

WHEREFORE, Williams demands from Defendant the following:

a) Issue a permanent injunction:
   i. Requiring Defendant to abolish discrimination, harassment, and retaliation;
   ii. Requiring allocation of significant funding and trained staff to implement all changes within two years;
   iii. Requiring removal or demotion of all supervisors who have engaged in discrimination, harassment, or retaliation, and failed to meet their legal

       responsibility to promptly investigate complaints and/or take effective action to stop and deter prohibited personnel practices against employees;

    iv. Creating a process for the prompt investigation of discrimination, harassment, or retaliation complaints; and

    v. Requiring mandatory and effective training for all employees and supervisors on discrimination, harassment, and retaliation issues, investigations, and appropriate corrective actions;

b) Issue an order requiring Defendant to expunge Williams' personnel file of all negative documentation;

c) An award against each Defendant for compensatory and monetary damages to compensate Williams for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $25,000 per claim to be proven at trial;

d) An award of punitive damages against each Defendant in an amount in excess of $25,000;

e) An award of reasonable attorneys' fees and non-taxable costs for Williams' claims as allowable under law;

f) An award of the taxable costs of this action; and

g) An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

  /s/ Evan R. McFarland
Evan R. McFarland (0096953)
Matthew G. Bruce (0083769)
     Trial Attorney
Brianna R. Carden (0097961)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
Spectrum Office Tower
11260 Chester Road, Suite 825
Cincinnati, OH 45246
Phone: (216) 291-0244 x173
Fax:    (216) 291-5744
Email: Matthew.Bruce@SpitzLawFirm.com
Email: Evan.McFarland@SpitzLawFirm.com
Email: Brianna.Carden@SpitzLawFirm.com

*Attorneys for Plaintiff Damian Williams*

## JURY DEMAND

Plaintiff Damian Williams demands a trial by jury by the maximum number of jurors permitted.

  /s/ Evan R. McFarland
Evan R. McFarland (0096953)